May it please the court. I'm Jamie Santos and I represent Hunger Station, the plaintiff appellant. I'm planning to reserve three minutes, but I'll just keep an eye on the clock. Thank you defendant. Thank you. The defendants Pace and Swift unlawfully accessed US servers to find highly valuable intellectual property that they knew had been stored there. They copy that property onto other US servers and then used it to develop infringing apps that they distributed through US companies. The due process clause does not shield them from answering for those US torts in US courts. If somebody travels to a forum and commits a tort there, he can be sued there. Even if both he and the plaintiff are non-resident. May I stop you right there? Because you're very articulate and a lot of this stuff we know really well, but I want to just want to focus and get your expertise to help us out with where this a tort occurred. Yeah, I understand what freestream said. I know about traveling to a jurisdiction, but you're wanting this tort to have occurred in the United States. Could you speak to that? Please? Absolutely. Your Honor. There are three torts under federal law that occurred entirely within the United States. First under the CFAA, the Computer Fraud and Abuse Act, the act of accessing a protected computer and causing damage or loss is a tort within the United States. Under the Defend Trade Secrets Act, the act of stealing or copying trade secrets is a violation. It's a tort committed within the United States and under the Copyright Act, the act of copying copyright protected source code from a US server to another US server is a copyright violation infringement that occurred entirely within the United States. And Your Honor, the defendants have largely focused on the plaintiff's lack of form contact. So on hunger stations, lack of a residency in the United States, but under this court's precedence, that is not relevant and Walden has instructed courts to focus on the defendants contacts with the form rather than on the plaintiff and the location of the server that was breached and from which trade secrets were stolen is relevant to the defendant's contacts, but the residency of the plaintiff is not and that's why in the vast majority of server breach cases, we cite the focus of the analysis is on the location of the server and not on the residency of the plaintiff. And the defendants also focus a lot on the third party ownership status of the server and that I believe is a particularly odd thing to focus on because when you have a tortious act that's committed in the forum, it does not matter whether a third party is involved and I don't think this court has to look any further than the Pucar International case and Free Stream Aircraft, both of which involved foreign plaintiffs and foreign defendants and torts that were committed vis-a-vis third parties. So Pucar International involved a fraudulent demand on a third party bank in California, which is quite similar to the third party server status we have here. Free Stream Aircraft involved a tort that was committed entirely within Nevada, but it was a fraudulent statement, defamatory statement made to a third party. It also involved non-forum plaintiffs and non-forum defendants and what this court said in both cases is that the first two prongs of the minimum context test is satisfied because there was a tortious act that happened in the forum. It didn't matter that there was no analysis of whether there was some type of market economic impact. There was no analysis of whether the plaintiff was a forum resident because there's no due process problem with a court exercising jurisdiction to adjudicate torts that happen within their own borders. I also want to focus for a minute on some of the policy concerns that I think the District Court focused on and that also the defendants briefs have focused on. The District Court seemed to think that if it ruled in our favor that the Northern District would become the International Court of Internet Law, and I want to assure your honors that that is not the case. And I think there's at least four reasons why that would not be the case or why that is not something that should be troubling. Number one, the arising out of or related to requirements of that's the second prong of the minimum context test. That's actually a pretty strong limitation on courts jurisdiction. So if you have a foreign company that just so happens to host its website or its data with a US company, it can't come into the United States and file for it, you know, file a lawsuit involving any IP dispute it has with someone else. If the dispute would have to arise out of those forum contacts like we have here and given that this is it to my knowledge the first server breach case in the Northern District of California. I don't think the slope is all that slippery the courts in the Third Circuit in Virginia in Texas in Michigan have all adopted the rule that we're proposing and the sky hasn't fallen there and I don't think there's any reason to believe that the sky would fall in the Northern District either. Did you intend to limit yourself to five minutes counsel? No, your honor. I think we have 15 me. No. Yeah, I'm just you. I'm just trying to figure out how you allocated your time. Oh, so I'm the only person arguing for hunger station. The Apple leaves have forgive me. Forgive me. My sheet's wrong. Go right ahead. Okay. So the next point I wanted to make on the policy considerations is that to the extent there are cases that are filed in the Northern District involving server breaches and trade secrets theft. I think that's entirely appropriate and not something to be concerned about because businesses and and individuals around the world are choosing to store their data in the United States and in the Northern District because they think it's safe there because there are a lot of laws that protect data security and trade secrets and when people breach those servers and steal that data they are making that they're taking advantage of that forum and they're making a connection with the forum itself and not just with individuals who happen to be within the forum. So what's the case law? What's the fact pattern that that helps you the most? What's the one that comes closest to this fact pattern? So the fact pattern itself. I would say the McDermott versus Dieter case is very close to us from the Third Circuit. I would also say Climax Portable is very close to us. The problem with those two cases. I agree. I've identified those and they're really comparable because they're somebody reaching in from outside and not just using a server but removing it and I and I think the verb is important. This is not I grant you that this is not a situation where we there the contact is limited to a message bouncing off of a server and it's called a qualitatively different but the two cases you mentioned are cases where an employee of a corporation reaches in from outside to basically steal from his or her employer and the employer is located in the forum. So it strikes me as really significantly different context by the defendant to the forum and I just want to give you a chance to respond if those are the two cases you think that help you the most. Absolutely, Your Honor. So I don't think that the fact that the plaintiff was located within the forum matters and I think that's for two reasons. Defendant, defendant. Sorry. Yeah, the fact that the defendants weren't in the forum. So in both of those cases, the defendants were foreign residents, not forum residents. The plaintiff was located in the forum, but in McDermott, it was a Canadian former employee in Climax Portable. I think it was a German former employee. We're saying the same thing. Okay. My apologies, Your Honor. I misunderstood. So in those cases, it is true that the plaintiff is located in the forum, but what Walden has told has admonished courts to do is to really focus on the on the defendants contacts within the forum and not on the plaintiffs contacts within the forum and not even on the effects of the defendants contact on the plaintiff. Right, but the former employees in those cases have contacts with the forum because they're employees of the plaintiff. Aren't they? You're right, Your Honor. But I think that when we're talking about a tortious act that's actually committed in the forum that you don't have to look to whether there was a connection between the defendant and a third person or and the plaintiff. And let me also point, Your Honor, to there's a case that we cite out of Virginia, which is it involved a Tennessee plaintiff and a Tennessee defendant and a forum server. Now, it's losing me. I'll remember it in just a second. But that's one of the key cases we cite because it didn't involve a plaintiff or defendant that resided in the forum itself. It's been business information systems versus professional governmental solutions. And I think what matters here is that the defendants, there's no dispute. They have not offered any evidence to refute that they knew where the server was located and they entered the forum to take property from there. The district court decided the location of the server was fortuitous and that what they were really aiming at is one Saudi competitor really aiming at the other. What is your response to that, please? So I think that the district court kind of misunderstood what fortuitous means. So the way I think you can look at what fortuitous means is it's something that's the opposite of purposeful. It happens when a defendant indirectly kind of accidentally becomes involved in the forum through no act of his own. So the worldwide Volkswagen case is a good example. The plaintiff after purchasing the car from Volkswagen in New York made the unilateral decision to move to Arizona and got in a car accident along the way. Volkswagen didn't do anything to make it into the forum. The same thing was true of Walden. But here you have nothing that is fortuitous that's happening. The defendants are knowing that the data that they're trying to steal is located on servers within the forum or going into the forum and stealing data from it. And I think that, you know, I pointed earlier to Picar and Freestream because I think that those are really relevant on this point because, you know, again, in those cases you had neither a forum plaintiff nor a forum defendant, but you had tortious activity within the forum and the court said that is enough. Why don't we decide that we don't think the tort occurred in the forum? So if you don't think the court, if you don't think the tort occurred in the forum, then I would say you still would have activity that's directed toward the forum and there is still, so even under the purposeful direction test, we would still win because you have activity that's directed toward forum property. And you have- It doesn't bring in the location of the plaintiffs because in the Bristol Myers case, the Supreme Court noted that the fact that the plaintiffs were not resident in the forum undercut that the defendant's actions were directed at the forum. And so in this case, their actions would not seem they were directed at the United States. They were directed at obtaining intellectual property from the plaintiff who's not here, who's not in the United States. I think the ultimate impact, the competitive advantage is to have a competitive advantage over Hunger Station in Saudi Arabia, but I think that what both the elements of these federal laws that we're talking about and also all of the case law that analyzes, that recognizes that when a forum is breached, you're contacting that forum. You're not just contacting someone who happens to be there. There's actually a physical server in the forum that is breached. And so that's why courts have analogized it to something like damage to an oil refinery or a trespass to chattel. They recognize that it actually is a physical intrusion within the forum, whether it happens through servers or not. And I think a case from this circuit- Did it matter to the defendants where these servers were located in Ireland or anywhere in the United States, somewhere in South America? Did it matter to them for what they were doing? Do they have any intention to direct their activities at the United States? So I think that the fact that they knew where the information was located and made the conscious choice to breach those servers and steal from it, supplies the non-fortuitousness. And I think a case on this point that's really helpful that we cite in our briefs that goes through this in a lot of depth is NTELLC versus Kenny Construction. It's from the Northern District of Illinois, and it says essentially, you know, post Walden, if there's a server breach, as long as you have knowledge by the defendants of where the server is located, that is a conscious activity that's directed toward the forum. And here we don't have, you know, speculation that they probably knew. We have specific allegations on pages 26 to 27 and 78 to 79 of the ER. Allegations and evidence pointing out that the defendants knew where the servers were located because they used to be Hunger Station executives and they knew the day-to-day operations because they themselves set up similar arrangements with the same U.S. companies to host data on U.S. servers. And because in some instances, they themselves were responsible for negotiating these contracts to host data in the United States as members of Hunger Station. I see them all. Do you want to save any time for rebuttal? Yes. Thank you, Your Honor. Okay. I obviously circled the wrong name on my sheet. So who's going to speak next and how much time do you want to share? Robert DeWitty. Ms. Lerman is going to speak first. Yeah. And how many minutes do you intend to retain? I'm going to try to help you if you tell me how many minutes you want. Right. I'm going to take between seven and eight minutes. Okay, good luck. I only say good luck because I only say good luck because lawyers usually aren't great at that. But give it your best shot. Okay, thanks. So our view is that Hunger Station is really trying to expand the concept of specific personal jurisdiction in this case where the contacts are really limited. We have two Saudi companies competing in Saudi Arabia. Their customers are in Saudi Arabia. All the witnesses are in Saudi Arabia. The apps are only used in Saudi Arabia. The apps are used by customers in restaurants in Saudi Arabia. So we're focusing on the location of the server and we think it's particularly fortuitous in this case because where the server is located is up to GitHub or Amazon, the third parties that are posting the information and they can put the servers anywhere. It doesn't have to be anywhere. Right. But her argument is different and I think it's really important and I think she has a point. Plaintiffs have a point that in this case, at least their allegation is it wasn't just anywhere and that the defendants recruited employees or former employees, I guess, of the plaintiffs who had access and knew darn well where it was stored. That's their version of events. Do you want to speak to that? How does that change the analysis? Well, they say they know that the servers were in the U.S. That's what they say. Yes, that's right. Somewhere in the U.S. But they aren't in the U.S. for any reason that would affect business being conducted in Saudi Arabia. A lot of people pick U.S. servers because... Why does that matter? Why does that matter? Let's say Hunger Station had a bunch of microchips and stored them in Tennessee for whatever reason because it's an interior state and therefore more safe. And the defendants sent somebody to Tennessee to steal the microchips and bring them back to Saudi Arabia. Defendant doesn't care about Tennessee. The defendant cares only about Saudi Arabia. Wouldn't there be personal jurisdiction in Tennessee? There might be. That's not the facts of this case. There's a difference between a physical warehouse holding physical property and an internet server that hosts data from all over the world and it's accessible from all over the world. Why is that? Why is that? Because, okay, presumably if you're keeping stuff in Tennessee, presumably some sort of business connection to Tennessee. No, there isn't. It's just a really great place to store microchips. Just like California is a really great place to store ones and zeros. Ones and zeros. I don't think that the Tennessee court would have jurisdiction in that case because if that's the only connection, the only connection and you have someone physically going to Tennessee in that case and physically breaking into something and maybe doing harm there. I mean, there's no harm to the server here. It's not a hacking case. It's just someone who allegedly has a key they shouldn't have who goes in and gets the code or the ones and zeros or whatever it is that we're talking about. That it's intellectual property, the fact that it's not physical makes a difference because otherwise you would say that, okay, every time Amazon decides to put its server in a given location in the world, that place suddenly has jurisdiction over any dispute that arises based on a company that stores its data there. Well, not really. Not really. This is different because the allocation here is more of a package. It's that Hunger Station alleges that the defendants recruited their former employees with access knowing where this important source codes were stored and then they misuse the access to go in and steal it. I mean, it is qualitatively different. It seems to me and even if you don't agree with me, if you'd take that as even as a hypothetical, shouldn't we be concerned or where would this end? Well, it's theft. It's not just something bouncing off a server. That's the allegation that we have to treat as true, right? Well, it's not physical stuff. And that's Judge Fineman's question. Why, especially in this day and age, why would we limit ourselves to chattel, to tangible chattel? Is that what you're suggesting we would do? Because you have to have, no. I think there are internet cases where you could have jurisdiction if there was sufficient contacts with the forum. In the American multimedia case, there were quite a few connections to the forum. There were customers in the forum. 20% of the customers were in the forum. They were marketing to the forum. They were making money advertising in the forum, but this court said that wasn't enough. Under cases like Walden, it's just like the Walden courts that even the place of injury isn't enough. There has to be a conglomeration sufficient to give the jurisdiction sovereignty over a particular case. And the Supreme Court has been very careful to limit sovereignty and it's to limit jurisdiction based on sovereignty and based on the interest of the defendant in its most recent cases. So Walden says my contract with the third party doesn't establish jurisdiction. My relationship with plaintiffs in the forum doesn't establish jurisdiction. Even the fact that harm occurred in the forum, if we're going to say that harm occurred in the forum here, that alone wouldn't be enough to establish jurisdiction. Our SWIFT simply doesn't have the kind of connections to the United States that it would need to have for the United States courts to exercise jurisdiction over it. That's our position. But it sounds like your position is if it's a physical theft, a theft of physical property that requires somebody to physically go to a location, there could be jurisdiction, but if it's a you can steal things without going to a place now, and that's the difference. I mean, I don't see how that's a principle difference. I think that's what Judge Feinerman and Judge Christen were both getting at. Why is that different? Why is it that Hunger Station couldn't select companies knowing their servers were in the United States with the expectation that they'd have certain protections including the United States laws? If any company anywhere decides to hire a U.S. company to store its information and doesn't say, oh, you must keep this box, this server in California because that's where I'm going to want to sue, there's no evidence that anything like that took place there. Not necessarily selecting California specifically, but they picked entities that are located in the United States and servers are in the United States. Presumably they had some knowledge of United States laws, then that they might be subject to protection by those laws. I mean, is this just something to be discarded that because someone can steal something virtually without physically stepping foot in the United States and that's it? That's the distinction? We think that if you say every time there's a server in this country, that parties from all over the world can litigate here, we think that would be expanding jurisdiction well beyond the parameters that this court and the Supreme Court have set. Again, that's not consistent. That's not consistent with allegations in the complaint. I think you about used up your time. Can we hear from opposing counsel? I'm sorry, co-counsel. Thank you, Your Honor. If it pleases the court, this is Robert DeWitty representing co-defendant Pace. Because of the truncated time, I'd first like to ask if you have any questions. It sounds like you have a lot of questions. I can either start with some of the matters that you brought forth or you can provide me your own questions at this time. I like Judge Feinerman's question, which we've now all three asked. Does the outcome of this case turn on whether the asset that was stolen is tangible? Yes, it does. Yes, it does. Because and I think it's very important that we focus on what it is. It is an intellectual property. It is an intangible versus a tangible medium. The case law has shown that tangible products, if they are accessed, even if it is a tangible server that in fact is owned by a corporation, that is much more of an intrusion into the space of that corporation. For example, the case of Climax, when we're talking about an intangible, in particular, a copyright, and let's focus on what's going on in this case here. We have a Saudi Arabian plaintiff. We have a Saudi Arabian defendant and we also have Saudi Arabian copyrights. The only touches with the jurisdiction, whether it be in California or the United States, are the fact that they rented space on a server and that's it. I would like to talk about one of the questions that one of the points that you brought forth, which are the verbs. You indicate the verb of copying or stealing. What was really stolen here? Well, in fact, when we look at the record, nothing was stolen really. The code is still in place on the server. There's no allegation that the code was actually taken off the server, that an Easter egg or malware was actually put in place of the code, that their code was actually destroyed. The allegation is it was copied, right? It was. So I'm not sure how this makes plaintiffs feel a whole lot better. Can you help me out with why is this? Why is this better? It may not make them feel better, Your Honor, but that doesn't mean that the United States is a jurisdiction for this matter. No, but counsel, go to the point, right? You were making, I'm not trying to deter you. I'm trying to get you to finish your sentence so I can understand the point you're making. What difference does it make whether it was moved or copied? Either way, it's done virtually. Well, when we boil it down, what are we talking about eventually? And I brought forth in my brief, which I thought was pertinent to bring it up front, which was harm. We're talking about harm. If you want to focus on the aspect of purposeful direction, one of the elements that must be shown is an aspect of harm in the particular jurisdiction, in the particular field. So why is the harm different if this confidential important information was copied versus, you know, moved? Why is that not harmful? Yeah. Well, I mean, harmful in the particular jurisdiction, the United States or California, what harm is there? The company that is actually storing the data, they still charge the company for the data. Now, the harm may be to Saudi or the hunger station, but where is that harm felt? Is it actually felt in California? They had no customers in California. They had no relationships with California restaurants or purchasers of the product. But that rationale would apply with equal force to microchips or gold bars. Not really. Not really, Your Honor, because if I go in there, excuse me for being frank. If I go into your jurisdiction, I want you to be frank and take your gold bars. Okay, you no longer have access to those gold bars. They're mine. In other words, there's only let me say this. Let's say I write the great American novel and it's stored in a safe in California and I live in Oregon. Okay, and I'm going to publish it next year and then your client goes and has somebody copy my great American novel, which is on papers, leaves the original there and takes it and publishes it. Yes, that's this case, isn't it? Not really, because what happens? I can take that great American novel and I can resell it back into your jurisdiction, thereby causing harm to you in that jurisdiction. How do I cause harm? I reduced your sales because now they're buying my great American novel, not yours. In this case, you know, talking about harm in the jurisdiction of California or the United States, the taking whether or not we think the taking of the copyright off the server is right or wrong. It's really not an issue here. It's about where the harm is felt and it's taken from California servers. Didn't have any customers in California. They didn't have any relationships with restaurants in California. It's all felt back in Saudi Arabia. Now, there is a Saudi Arabian copyright that exists. Copyright occurs when a work is put into a tangible medium. So they do have a right to bring that case in Saudi Arabia, but it is not the right venue for the United States. Where could your client be sued? Let's say Saudi Arabia. Okay, that's it. Saudi Arabia does have copyright laws. They do have copyright laws. Anything further? If you have any other questions, I can hold here. Doesn't look like we do. Thank you. Thank you. Miss Santos. Yes. Thank you. There's four points. I'd like to try to make in rebuttal. The first has to do with where with the difference between tangible and intangible goods. I think that this court's decision in Kremen versus Cohen is really useful on that. The court said in that decision that it would be a very curious jurisprudence to apply one rule to torching a file room and a different rule to hacking a mainframe. As to Mr. DeWitty's statement that there's no harm because Hunger Station still has access to his data. I think that misunderstands how intellectual property works. The value of intellectual property is in its exclusivity. When someone makes a copy of it, the owner no longer has exclusive power and authority over it and it is damaged their property in that moment. And I think that is reflected in the CFAA, which defines harm and courts have interpreted the definition of harm under the CFAA to include the access or collection of confidential data that is on a server that's breached. What's the third point that you wanted to make, Counsel? I wanted to point out that the ramifications of the defendant's position, I think are troubling. We have U.S. copyrights. And so if the defendant's position is adopted, that would essentially mean that foreign owners of U.S. copyrights cannot enforce their U.S. copyrights under U.S. copyright law for copying that occurred in the United States. And it would also mean that if they have data stored here, if that data is breached, they're out of luck. That's essentially what the court would be telling defendants. And your fourth point quickly, please. My fourth point is that I think there are difficult cases involving passive website use, but it is difficult to think of an electronic contact that more approximates physical presence than reaching into a forum, breaching a server, and stealing data from it. Thank you, Your Honors. Thank you all for your very helpful argument. We'll take this case under advisory.
judges: Christen, Feinerman, Bade